Good morning, may it please the Court. My name is Susan Hill, and I represent the petitioner, Mr. Antonio Lugo. The issue here is the writ of error porn notice and whether his 36-year-old conviction now at this point should be vacated due to him not understanding the nature of the charges that were made against him when he entered into his guilty plea, and furthermore, now that it has had very serious immigration consequences upon him as of today. Back when he entered into his plea of guilty, Mr. Lugo claims that he did not fully understand the nature of the charges against him. He states that when he discussed it with his criminal attorney at the time, his defense attorney, his attorney did not explain to him the specific elements that the government had to prove in order to achieve a guilty finding against him. He thought that because he had been found with drugs in the car that he had no defense, and therefore that was his decision for why to plead guilty. He did not think he had a defense. His criminal attorney did not advise him otherwise. When he was in front of the court, he states that he was simply told that he was being charged with a drug offense. He did not meaningfully understand the elements that had to be proved against him. Is the Strickland standard the one that still applies to the advice of counsel in these cases? Yes, Strickland does apply, Your Honor. Back in the 1970s, we weren't having as many immigration cases as we're having now. There probably were a lot of pretty good lawyers who would try to get a plea bargain if they could, and they wouldn't let their client plead guilty if there was any possibility of a better bargain. In that context, I was a district judge in the early 1970s, and I saw a lot of these cases, but most of the advice of counsel in this type of case was to try to get some kind of a plea bargain rather than just go to trial. Now, on the Strickland standard, how did this advice or failure to give, it certainly was not good practice for the defense attorney to just let his client plead guilty, but how did that violate the Strickland standard at that time? Well, at that time, Mr. Lugo did not understand the nature of the charges against him. He did not know that he had a defense available to him. How do we know that? How do we know, speak to me? That he didn't understand the charges. It is in his declaration that he submitted with the motion. There is no written record as to a plea colloquy and what was exchanged between Mr. Lugo and the court. However, the absence— The records don't exist. I mean, there would have been a rule. We had Rule 11. The district courts, even then, had to spend about 45 minutes trying to talk a person out of pleading guilty. But we don't have any record in this case. We just have his if she makes a plea. We have that, and then there's also the form of the judgment, and there's other various forms from the court. There's no written forms indicating that he ever engaged in or the content of the plea colloquy that he engaged in. Well, that's because it's been so long. Correct. The records are gone. The judge is deceased. The attorney is deceased. And so it's just really difficult for us to determine precisely what happened. That's the difficulty I have with this case is we just don't know. Correct. It is difficult, and it could be suggested that this could be set for a hearing to gather further evidence, perhaps there's other parties who are able to come forward and be witnesses who can testify as to what happened back then. But the fact of the matter is that he's alleging that, especially in light of Padilla, there's been a recognition that there is the constitutional right to be advised of the immigration consequences. The fact that this happened 36 years ago should not go to punish him because the records have been destroyed. He's still asserting that there's a constitutional error that took place. When did it become established law that a defendant has a right to be advised of the immigration consequences of a plea? Was that established law at the time of the plea? It was not established law at the time of the plea. It was considered to be a collateral consequence. However, in light of recent precedent, it has been recognized that immigration law and criminal law are basically inextricably intertwined. And especially at the time when Mr. Lugo pled guilty, his particular offense was per se barred to ever returning to the United States or ever gaining lawful entry. That was definitely on the books back then, and it did make a significant difference to him having no status in the United States. Therefore, it was in the laws, and now in hindsight, I guess we could say, we do acknowledge that immigration and criminal are so closely related, and they have been getting more and more and more closely related. But what I'm driving at is, assuming we get past the latches problem, which so far our discussion has been assuming, assuming we can get past the latches problem, what's the standard that we apply to decide whether relief is going to be available on coram nobis? Is it purely a Strickland question? Or a different part of my issue on that point would be, do we apply retroactively the law that was established later that said, you are entitled at the time of the plea to understand the immigration consequences of the plea? Can you help me understand what we're supposed to do with that issue? If I understand your question, Your Honor, I believe that PIDEA should be applied retroactively. It does recognize the serious consequences that immigration laws can have, or I'm sorry, that criminal laws can have upon immigration status. Additionally, I do know that at the time, it was not common practice for attorneys to advise their clients of the immigration consequences. However, because it was not common practice does not mean that he should not, that he somehow gave up that right. Let me ask the question in a different way. In order for you to prevail on the merits of the coram nobis, do you have to show a Strickland violation at the time of the plea? At the time of the plea, it's a two-part inquiry, because part of it is whether or not he did ever receive a meaningful understanding of the charges that were levied against him before he accepted the guilty plea, and that does not necessarily have anything to do with Strickland. Okay, so number one, does he have a meaningful understanding, and then number two would be Strickland? Correct. Okay, I got it. And we don't have a record of the plea colloquy and so on, so the evidence as to whether he understood and didn't understand that we would ordinarily look to, we just don't have. All we have is his statements as to what he heard, said, understood. Correct. That is correct. There is some written evidence, and again, as I said earlier, it does not indicate specifically what happened in the plea colloquy. At the conclusion of proceedings, the order does state that he is not allowed to, if he is deported, he is not allowed to return to the United States unless he is given permission by immigration. In effect, that is misleading because he would never, ever receive permission from immigration to return. That was foreclosed upon entry of the guilty finding against him. There is no way he would ever get back into the United States. Had he known what he was facing and that he could have put up a defense, he could have and he states he would have tried to put up a defense. The outcome could have been significantly different. It's unsure whether or not the government could have proved up its case against him. Can I address directly? Judge Rollinson sort of addressed it in a preliminary sense, but directly the question of latches. I think the statute of limitations does not apply to Cornobus. Correct. But latches does. Why isn't there latches? This is an awful long time, and the weight has deprived us of an awful lot of evidence that we would ordinarily look to to determine whether or not he's right in his substantive contentions. That sounds like latches to me. Why is this not latches? Because, Your Honor, there is some evidence of what occurred back then. Excuse me. Mr. Lugo was not able to bring this claim earlier. He did not have opportunity to learn the effect of his conviction until just now. The whole purpose of Cornobus relief is to remedy past errors that have been made against a defendant, and it is acknowledged that a long time has passed. It is the fault of pretty much no one that the records have been destroyed. However, it's a serious of such a lengthy period, yes, but it has to be balanced out against the consequences that Mr. Lugo and his U.S. citizen wife are facing and that he's not able to remain in the United States. His credibility can still be assessed in a hearing. Again, like I said, they can call additional witnesses, and a new record can continue to try to be made. Excuse me. And he is facing, as acknowledged by Padilla, he is facing a constitutional error that had occurred in his hearing and that he did not understand these consequences. If there's no further questions, may I reserve my time? Yes. Thank you. May it please the Court, Bruce Kastner on behalf of the United States. Your Honor, I'd be happy to address the merits if the Court wants to, but I think the first question is Judge Benitez did not address the merits. He dismissed his case on latches. He went through the record and demonstrated. He actually dismissed it based on the statute of limitations. He did both. He said latches, and you haven't been reasonably diligent in your pursuit of your claimant. Where's the latches discussion in the record? Okay, it is at ER 6, time barred by latches. And then at ER 7 and 8, did not exercise reasonable diligence. He also went through the lack of the attorney being dead and lack of transcripts and so forth demonstrating prejudice. We think that Judge Benitez was absolutely 100% correct finding this case barred by latches. I'll begin with the point that counsel says this defendant did not know of the negative implications of his 1975 conviction until 2009 when he was ordered removed. I can't find in the record where anyone actually says that. It's not in his declaration. He doesn't say that in his declaration. It seems to me it's just a supposition by counsel. If I've missed something in the record, I apologize, but I don't see anywhere in his declaration him claiming, I didn't know there was a negative implication for me pleading guilty to a drug case until 2009. I think what's also important about his declaration is all the things that are not in his declaration. How about this? If I had known that pleading guilty would prevent me from ever being able to obtain lawful resident status in the United States, I would have tried to defend myself against the charges brought by the prosecutor. That says nothing about I didn't know there was a problem until 2009, Your Honor. Our point is he waited 36 years. Wait a minute. If I had known that pleading guilty would prevent me from being able to obtain LPR status, that sounds as though if he had known then, he would have behaved differently. He didn't know then. The point that Judge Benitez found, and I'm making here, is he should have known way before 2009. And the reason we know he knew before 2009 is the other things he left out of his affidavit. He left out of his declaration in 1975 when he was deported, he was given a document that said, you can't come back in without permission. If you need to know how to get permission, contact INS or the nearest American counselor. If he would have done that, he would have known right away in 1975 that he had a problem. Apparently he chose not to. 1975? That's when he was deported the first time. That's when he got the document saying he can't come back without permission. If you want to know how to get permission, talk to INS or the American counselor. But is that linked to his conviction, though? Yeah. No, that deport was not. No, it didn't say you're deported because of this conviction. That's the missing. But I don't think that's missing, Your Honor, because if he wants to come back legally, he's supposed to check with INS or an American counselor. He chose instead to make a conscious decision to come in illegally. He avoided the opportunity to attain knowledge about what his legal rights would be by coming in illegally. Well, there are two questions here. One is, what did he know? And the other one is, what could he have known? You're arguing what he could have known. He should have known if he had followed the law. And if he didn't know, it was deliberate ignorance is what I'm saying. Deliberate ignorance. You're pushing pretty hard on that. I'm sorry, Your Honor. I disagree with that. The guy's been in the country illegally since 1978. He gets picked up and gets a criminal charge in L.A., gets deported again, comes back in illegally. He should have checked to find out what the legal way to do it was. He should have checked. But the question is, how does that relate to his knowledge that his conviction was linked to his inability to attain knowledge? Why would you come in? Can I finish my question? Oh, I'm sorry, Your Honor. I apologize. How does that show that his knowledge was linked to his inability to come in because of the conviction? That's what I see as the... The point I'm trying to make, and maybe I'm not very articulate, I'm saying he either checked and found out he couldn't come in because he had a drug charge, or he made the conscious decision to come in illegally. He made the conscious decision not to check. He had deliberate ignorance. Well, you know, even if he didn't have the drug conviction, he could not have come in legally. I'm not clear on that, Your Honor. I'm not sure about that. He could have come in illegally if he didn't have the drug charge? No, no. I thought it was... That's the point he was making. Listen, he was deported the first time around, irrespective of the drug charges. Correct. That's correct. That is to say, he was in the country illegally the first time, irrespective of the drug charges. Correct. So what makes him think that he can come back in legally this time, irrespective of the drug charges? No, he was illegal the first time. He's going to be illegal the second time. He was told... Irrespective of the drug charge. I disagree with that, Your Honor. He was told, you can check to see if there's a way for you to come in legally. Yeah, and anybody in that situation in Mexico knows, yeah, I can check and I can find out I can't come. I'll say this. Anybody that knows that a cop with 425 pounds of marijuana in the trunk of their car knows they've got a big problem with immigration, too. And the claim that he didn't know until 2009 does not ring true. Look what else he didn't put in his declaration. He didn't put in that I applied twice to get a new status and was denied twice. He didn't put in that... Ordinarily, I ask counsel to speak up. Oh, I'm sorry. I've never used a microphone in all my time out here. Am I getting a little too loud? I can hear. Okay. He didn't put in his declaration. Can you hear me now? They can hear you. Mr. Verizon, I can hear you now. Okay. If you could just lower your voice a little bit, it would be helpful to me. Thank you. He didn't put in his declaration that he applied twice to change his status, and both times it was denied. He didn't put in his declaration in 1997 he applied for LPR status, and he lied on that application. He said when he was asked, have you any prior convictions, he said no. He didn't put in his declaration below that in 1999 he had an interview, and he was asked, do you have any convictions that you do and you need an explanation. He totally ignored that. He did not reply to them. He didn't put in his declaration. In 2002, he got a letter from INS saying, look, if you didn't reply to our request for information about possible convictions, this is your last chance. Give us something in writing or give us a deposition and you'll never have been convicted. He blew that off, too. He didn't put in his declaration. In 2003, he got a letter from INS saying, your application for LPR is denied because you have not replied to our request for information about your prior criminal convictions. Judge Benitez correctly found that the absolute last moment that he knew that he had a problem with his 75 conviction was in 2003. I contend that he knew decades before that. I also contend that Judge Benitez is absolutely correct that the last possible moment was 2003 that he knew. He knew, and he waited until 2009. The judge is dead. The defense counsel is dead. There's no transcripts. There's no government file. It seems to me, Your Honor, this is a poster child for a laches case. Not only did Mr. Lugo sleep on his rights, which we know is the basis for a laches, he had several alarms that went off, and he just slept through those alarms, to put it as this Court's didn't tell him. He should have filed much, much earlier, and we would not be here arguing about laches. I think Judge Benitez should be upheld as his missile on laches. I'm happy to discuss the merits if this Court is interested in discussing the merits. I don't think there are any merits. If you put it in our briefs, we don't think Padilla is retroactive. I cited this Court in the 28th Circuit, the 10th Circuit, and the 7th Circuit, and found it not retroactive. The 3rd Circuit has found it to be retroactive. We, of course, agree with the 10th and 7th Circuit analysis. But even if you did make Padilla, I just want one more point before I sit down. If you make Padilla retroactive, it certainly would not apply to a 1975 guilty plea. I was practicing in 75. I took a lot of guilty pleas in front of Judge Turrentine. I'll say this. The chances of him not explaining to this defendant that he had to know there were drugs in the car are almost zero. I would say zero. The chances of a defense attorney being the normal standard of practice in 1975 for a defense attorney to say to an illegal alien who has 425 pounds of marijuana in his car, if you take this plea and you want to apply for LPR in 20 or 30 years, it's going to be a problem for you. That just wasn't happening. That wasn't the normal practice. That wasn't the standard practice. So stripping was not violated in 1975 when this plea was taken. I think that the dismissal of Mr. Lugo's petition should be upheld, and I'd welcome any questions. Is it fair to say that the thrust of the district court's analysis was on statute of limitations? That is fair to say. That is fair to say. Okay. Thank you very much. I'm sorry if I was too loud. That's all right. No, usually the problem is the other way. If I have to choose between the two, I'll take two out. Thank you. Your Honor, first I'd like to address what was in Mr. Lugo's declaration, page 77 of the excerpts of record at the bottom. Starting at line 27, he states, it was only when I reviewed my court records with my attorneys, and this goes over to page 78, that I learned that I had been convicted of possession of marijuana. So there's his explicit statement that he did not know what occurred until he reviewed his record in 2009. I apologize for my voice. He had no opportunity to review this record because, as it's been noted, the record is very sparse and there's not much to it. At this point, but we don't know what was in the record when the record still had its useful life, shall we say. Correct. I think it said it was destroyed after 20 years, which would have been probably about 95. He was asked to provide additional conviction documents leading up to 2003 with his adjustment of status case through his wife. He did not provide them because the court records really aren't there. They're not really available if he had gone in 2003 to obtain them, and they were destroyed in 95. He had to use the services of my office to even get as far as he did get with what he provided. So it was difficult for him to do this on his own. Counsel, do you take issue with opposing counsel's litany of omissions from the applications? Yes, I do, Your Honors. It's because this court has frequently recognized in immigration case contexts that these people are unrepresented, they lack resources, they don't understand the court system, they don't speak the language well. It's difficult for them to fill these forms out accurately and completely. But if somebody asks if you have a conviction, how difficult is that to answer if you've been convicted of something or not? And there's no evidence, Your Honor, that he was the one who filled out the form. It could have been filled out by a preparer who did not, and it's been well documented within the circuit that there are unscrupulous preparers who do not do their job correctly or at least do it negligently and don't fill it out correctly. Additionally, there's no evidence as to whether he has sophistication. There's no evidence at all as to, aside from his declaration, as to what occurred with the denial of the SAW application. We don't know what the reasons were. And the 2003 adjustment of status denial was just because he could not obtain the court records. It did not put him on notice that the actual conviction was a per se bar to him ever getting adjustment of status relief. In fact, his intent in applying for adjustment of status is evidenced by the fact that he applied. He thought he was eligible, and he did not know until he applied that there could be a problem with his conviction. This was not taken care of until 2003. The NTA was issued in 2003, and then the case was administratively closed for the next five years. So it's excusable why he did not do anything further, because he did not have any further information. He was in limbo waiting until the court picked his case up again. Thank you. Thank you very much. Thank both of you for your arguments. Rodriguez-Lugo v. United States is now submitted. The next case on the argument calendar, United States v. CB&I Constructors, Inc. Thank you.
judges: Goodwin, Fletcher, Rawlinson